UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MELANIE HILTON, | ) |
| | ) CIVIL ACTION FILE NO. |
| Plaintiff, | ) |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| THE CARTER CENTER, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Melanie Hilton files this Complaint against The Carter Center, Inc. ("TCC") showing the Court as follows:

### THIS ACTION, JURISDICTION, AND VENUE

1. This is an action for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, ("Title VII"), 42 U.S.C. § 1981; and the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 *et seq.* ("ADA").

2. Hilton seeks injunctive and declaratory relief, back pay and lost benefits, front pay, compensatory and punitive damages, and attorney's fees and costs of litigation.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

1

4. Venue is proper in this district and division under 28 U.S.C. § 1391 because TCC conducts business in this district and division and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On June 23, 2022 Hilton filed a Charge of Discrimination with the EEOC and on December 6, 2023, Hilton received a Determination and Notice of Rights on her Third Charge (410-2022-06679).

6. The Parties entered into and amended a tolling agreement relating to the December 6, 2023 Determination and Notice of Rights.

7. Hilton brings this Lawsuit within the time provided by the amended tolling agreement.

8. Thus, Hilton has exhausted her administrative remedies.

## PARTIES

9. Hilton is a former TCC employee, an employee within the meaning of Title VII, and an individual with a disability pursuant to 42 U.S.C. § 12102(1) and submits herself to the jurisdiction of this Court.

10. Defendant TCC, a nonprofit corporation doing business in the State of Georgia, is subject to personal jurisdiction in Georgia, and is an "employer" under the ADA and Title VII because it engaged in commerce or in an industry affecting

commerce within the meaning of the ADA and Title VII and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

## BACKGROUND

11. On July 30, 2018, Hilton began employment with TCC as a Senior Program Associate.

12. On Hilton's second day of employment, Faizat Badmus-Busari, a then temporary employee from Nigeria, expressed displeasure that Hilton, an Indian, had been recruited to lead a project that focused on Nigeria.

13. In the weeks following, Badmus-Busari routinely directed discriminatory remarks at Hilton, other co-workers, and interns, many of which were made in the presence of and went unchallenged by Hilton's supervisor, Laura Olson.

14. Olson had, herself, directed discriminatory remarks, about Hilton's color, nationality, and race – as well as those of other TCC employees – at Hilton, other co-workers, and interns.

15. On October 24, 2018, Badmus-Busari entered a closed-door meeting and attacked Hilton and an intern of Indian origin while they were working in Olson's office.

16. When Hilton attempted to exit the room, Badmus-Busari – who had

by then spent several minutes shouting at Hilton so loudly it drew the attention of bystanders through the closed door of Olson's office – lunged in Hilton's direction, physically prevented Hilton from exiting, and warned Hilton against leaving while verbally threatening her with violence.

17. Hilton immediately reported Badmus-Busari's attack to Olson and complained to TCC about her hostile and discriminatory work environment.

18. Within days of Hilton's complaint, Olson – at the direction of and with the approval of TCC and its Board – initiated a sustained campaign of retaliation against Hilton.

19. When Hilton became pregnant, Olson escalated her harassment and intimidation, prompting Hilton to warn TCC that the abusive meetings, which Olson insisted on holding "alone," were not "safe" for Hilton and her unborn child – warnings Hilton's doctors reiterated to TCC.

20. While conditioning Hilton's employment on her submitting to abusive one-on-one meetings with Olson, TCC prohibited anyone else from observing the meetings, and insisted that the one-on-one meetings occur in the same room Badmus-Busari had attacked Hilton.

21. Within days of Hilton's first EEOC charge being provided to TCC, TCC significantly increased the frequency of Hilton's mandatory unsupervised one-on-one meetings with Olson and continued to deny Hilton's doctor's repeated

requests for temporary supervisory reassignment, while they falsely claimed that Emory University – rather than Hilton's actual employer, TCC – was responsible for denying Hilton's request for temporary reassignment.

22. As Hilton's pregnancy progressed, TCC escalated its discrimination and retaliation, emboldened Olson to openly abuse Hilton further, and exacerbated Hilton's hostile work conditions, before awarding Hilton's position to Badmus-Busari, as part of a public effort to ostracize Hilton from TCC's Human Rights Program ("HRP").

23. Several weeks before Baby Jane Doe's birth, after learning that Hilton was actively experiencing pregnancy-related complications, and that Hilton had filed an amended EEOC charge, TCC intensified its retaliation.

24. Baby Jane Doe was born suffering from the same injuries Hilton's doctors repeatedly warned TCC that exposure to Olson's abuse would inflict and, as a result of the retaliatory hostile work environment resulting in harm to her and her child, Hilton was diagnosed with post-traumatic stress disorder.

25. On May 10, 2019, Hilton timely filed Charge No. 410-2019-05223 with the EEOC, on October 17, 2019, Hilton amended her Charge, and on June 16, 2020, Hilton filed Charge No. 415-2020-01102, alleging further discrimination and retaliation.

26. On July 8, 2020, Hilton sought, and later received, a Notice and

Determination of Rights.

27. Hilton filed her lawsuit on October 6, 2020 which was later removed by TCC to federal court.

28. On March 21, 2021, Hilton received a Notice and Determination of Rights on her second charge, and Hilton amended her original lawsuit within ninety days.

29. Beginning in 2020, TCC employees began working remotely due to the COVID-19 pandemic.

30. On the morning of November 1, 2021, after an extended period of COVID-related facility closure, Hilton attempted to return to her office at The Carter Center.

31. Although other Carter Center employees were inside the facility and had gained entry that morning through their respective employee passcodes, Hilton's door-entry passcode had been disabled and she was unable to enter despite attempting to gain access through several different doors.

32. Hilton then suffered a relapse of her PTSD and was forced to take Family and Medical Leave Act leave.

33. On January 6, 2022, Hilton learned that TCC had rehired Faizat Badmus-Busari to return to TCC on January 18, 2022, to work in an office alongside her – just days before she was to return to work from medical leave.

34. At the time TCC rehired Badmus-Busari, TCC was aware of Badmus-Busari's unlawful conduct towards Hilton and other Carter Center employees.

35. In sum, following all of Hilton's protected activity and with knowledge of the emotional toll the retaliation and retaliatory hostile work environment was taking on Hilton, TCC hired Badmus-Busari as a permanent employee, sent Badmus-Busari on a public relations trip to Guyana while she was not even a TCC employee, rehired Badmus-Busari in March 2020, promoted Badmus-Busari and placed her in an office situated two feet from Hilton's office.

36. In or around 2020/2021 Badmus-Busari again quit TCC and returned to live in Nigeria.

37. TCC then rehired Badmus-Busari a second time immediately before Hilton's PTSD-related FMLA leave was set to expire and again placed her in an office within two-feet of Hilton's office.

38. TCC, with knowledge of Hilton's PTSD, knowingly situated Badmus-Busari next door to Hilton's office and intentionally created an environment more physically and emotionally threatening and harmful to Hilton than it was when Badmus-Busari previously attacked Hilton.

39. On January 19, 2022 – because TCC rehired and promoted the once temporary administrative employee who had physically attacked and falsely imprisoned Hilton to continue to intimidate her physically and emotionally –

Hilton was constructively discharged from TCC because of the untolerable working conditions.

40. TCC rehired Badmus-Busari even though she was not the most qualified of all the candidates for the position and, in fact, the more qualified candidates had expressed support for Hilton.

41. All of the above stated conduct created a retaliatory hostile working environment and untolerable working conditions for Hilton.

42. TCC, moreover, publicized Badmus-Busari's rehiring in retaliation for Hilton's prior charges of discrimination and the lawsuit she filed against TCC, to make her continued employment at TCC untenable, as well as to intimidate other employee-witnesses to TCC's misconduct.

## COUNT I – RETALIATION UNDER TITLE VII

43. Hilton repeatedly engaged in protected activity under Title VII when she reported race and national origin discrimination, internally, beginning in October 2018, February 2019, and May 2019, filed and amended Charges of Discrimination on May 10, 2019, October 17, 2019, and June 16, 2020, and filed suit against TCC on October 6, 2020.

44. Prior to Badmus-Busari's attacking Hilton, Hilton's notifying TCC of Olson's and Badmus-Busari's discriminatory and racially hostile conduct towards Hilton, Hilton filing Charges of Discrimination, and Hilton's filing of her October

2020 lawsuit, Olson highly regarded the quality of Hilton's work.

45. As a result of engaging in protected activity, TCC took various adverse employment actions against Hilton, including those actions raised in the previously filed lawsuit.

46. As relates to Hilton's Charge of Discrimination underlying this action, among other adverse actions, TCC locked Hilton out of the workplace and on January 6, 2022, Hilton learned that TCC had rehired Faizat Badmus-Busari to return to TCC on January 18, 2022, to work alongside her – just days before she was to return to work from medical leave.

47. At the time TCC rehired Badmus-Busari, TCC was aware of Badmus-Busari's unlawful conduct towards Hilton and other Carter Center employees.

48. In rehiring Badmus-Busari, TCC retaliated against Hilton and created a retaliatory hostile work environment and untolerable working conditions.

49. TCC, moreover, publicized Badmus-Busari's rehiring in retaliation for Hilton's prior charges of discrimination and the lawsuit she filed against TCC, to make her continued employment at TCC untenable, as well as to intimidate other employee-witnesses to TCC's misconduct.

50. Among other adverse actions, TCC constructively discharged Hilton on January 19, 2022.

51. Whether viewed individually, or in their totality, the adverse and

retaliatory actions Hilton endured at the hands of TCC far exceed those which might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

52. As a direct and proximate result of TCC's retaliation, and because of their willful and wanton violation of Title VII, Hilton suffered lost wages and employment benefits, lost opportunities for advancement, severe emotional distress, pain and suffering.

53. Hilton is, pursuant to Title VII, entitled to damages, including back pay and lost benefits, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable.

### COUNT II – RETALIATION UNDER 42 U.S.C. § 1981

54. Hilton repeatedly engaged in protected activity under 42 U.S.C. § 1981 when she reported race and national origin discrimination, internally, beginning in October 2018, February 2019, and May 2019, filed and amended Charges of Discrimination on May 10, 2019, October 17, 2019, and June 16, 2020, and filed suit against TCC on October 6, 2020.

55. Prior to Badmus-Busari's attacking Hilton, Hilton's notifying TCC of Olson's and Badmus-Busari's discriminatory and racially hostile conduct towards Hilton, Hilton filing Charges of Discrimination, and Hilton's filing of her October 2020 lawsuit, Olson highly regarded the quality of Hilton's work.

56. As a result of engaging in protected activity, TCC took various adverse employment actions against Hilton, including those actions raised in the previously filed lawsuit.

57. As a result of engaging in protected activity, TCC took various adverse employment actions against Hilton, including those actions raised in the previously filed lawsuit.

58. As relates to Hilton's Charge of Discrimination underlying this action, among other adverse actions, TCC locked Hilton out of the workplace and on January 6, 2022, Hilton learned that TCC had rehired Faizat Badmus-Busari to return to TCC on January 18, 2022, to work alongside her – just days before she was to return to work from medical leave.

59. At the time TCC rehired Badmus-Busari, TCC was aware of Badmus-Busari's unlawful conduct towards Hilton and other Carter Center employees.

60. In rehiring Badmus-Busari, TCC retaliated against Hilton and created a retaliatory hostile work environment and untolerable working conditions.

61. TCC, moreover, publicized Badmus-Busari's rehiring in retaliation for Hilton's prior charges of discrimination and the lawsuit she filed against TCC, to make her continued employment at TCC untenable, as well as to intimidate other employee-witnesses to TCC's misconduct.

62. Among other adverse actions, TCC constructively discharged Hilton

on January 19, 2022.

63. Whether viewed individually, or in their totality, the adverse and retaliatory actions Hilton endured at the hands of TCC far exceed those which might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

64. As a direct and proximate result of TCC's retaliation, and because of their willful and wanton violation of 42 U.S.C. § 1981, Hilton suffered lost wages and employment benefits, lost opportunities for advancement, severe emotional distress, pain and suffering.

65. Hilton is, pursuant to 42 U.S.C. § 1981 entitled to damages, including back pay and lost benefits, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable.

## COUNTS III – RETALIATION UNDER THE ADA

66. Hilton repeatedly engaged in protected activity under the ADA when she requested reasonable accommodations for her high-risk pregnancy, filed and amended Charges of Discrimination on May 10, 2019, October 17, 2019, and June 16, 2020, and filed suit against TCC on October 6, 2020.

67. Prior to Hilton's engaging in protected activity, Olson highly regarded the quality of Hilton's work.

68. As a result of engaging in protected activity, TCC took various

adverse employment actions against Hilton, including those actions raised in the previously filed lawsuit.

69. As a result of engaging in protected activity, TCC took various adverse employment actions against Hilton, including those actions raised in the previously filed lawsuit.

70. As relates to Hilton's Charge of Discrimination underlying this action, among other adverse actions, TCC locked Hilton out of the workplace and on January 6, 2022, Hilton learned that TCC had rehired Faizat Badmus-Busari to return to TCC on January 18, 2022, to work alongside her – just days before she was to return to work from medical leave.

71. At the time TCC rehired Badmus-Busari, TCC was aware of Badmus-Busari's unlawful conduct towards Hilton and other Carter Center employees.

72. In rehiring Badmus-Busari, TCC retaliated against Hilton and created a retaliatory hostile work environment and untolerable working conditions.

73. TCC, moreover, publicized Badmus-Busari's rehiring in retaliation for Hilton's prior charges of discrimination and the lawsuit she filed against TCC, to make her continued employment at TCC untenable, as well as to intimidate other employee-witnesses to TCC's misconduct.

74. Among other adverse actions, TCC constructively discharged Hilton on January 19, 2022.

75. Whether viewed individually, or in their totality, the adverse and retaliatory actions Hilton endured at the hands of TCC far exceed those which might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

76. As a direct and proximate result of TCC's retaliation, and because of its willful and wanton violation of Title VII and 42 U.S.C. § 1981, Hilton suffered lost wages and employment benefits, lost opportunities for advancement, severe emotional distress, pain and suffering.

77. Hilton is, pursuant to the ADA entitled to damages, including back pay and lost benefits, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable.

## PRAYER FOR RELIEF

Plaintiff Melanie Hilton respectfully requests the following relief:

a. A declaratory judgment that Defendant violated Ms. Hilton's rights under 42 U.S.C. § 1981, Title VII, and the ADA;

b. A permanent injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

c. Full back pay from the date Ms. Hilton was constructively discharges along with prejudgment interest thereon;

d. Compensatory damages, in an amount to be determined by the

enlightened conscience of the jury, for all of Plaintiff Hilton's, past, present, and future emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

e. Punitive damages against Defendant in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendant for their conduct toward Plaintiff and to deter Defendant from similar conduct in the future; and

f. Reasonable attorneys' fees and costs under Title VII, the ADA, and 42 U.S.C. § 1981; and

g. Other and further monetary and equitable relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

LEGARE, ATTWOOD & WOLFE, LLC

**Cheryl B. Legare**
Georgia Bar No. 038553
cblegare@law-llc.com

125 Clairemont Ave, Suite 380
Decatur, GA 30030
Tel: (470) 823-4000
Fax: (470) 201-1212